UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

J.N

MAY 1 7 2006

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| DAVID GROSKY, | ) |
| CRAIG RAPPIN, and | ) |
| MELVIN DOKICH | ) |

**06 CR 0359**

Violations: Title 18, United
States Code, Sections 2, 1341,
1343, 1956(a)(1)(A)(i), 1957,
and Title 31, United States
Code, Section 5324(a)(3)

MAGISTRATE JUDGE DENLOW

**JUDGE SHADUR**

COUNT ONE

The SPECIAL SEPTEMBER 2005 Grand Jury charges:

1.   At times material herein:

a.   Efoora, Inc. and its subsidiaries purported to be in
the business of designing, manufacturing and marketing rapid
diagnostic tests.   Efoora, Inc. had two subsidiary companies:
Virotek, LLC, which was the manufacturing division, and Prion
Developmental Laboratories, which engaged in research and
development (hereinafter collectively referred to as "Efoora").
Efoora was located in Buffalo Grove, Illinois.

b.   Efoora has issued and sold over 100 million shares
of its stock at prices ranging from approximately $.10 to at least
$2.50, raising over $30 million from more than 3000 investors.
Efoora has never registered its common stock with the United States
Securities and Exchange Commission ("SEC").

c.   Defendant DAVID GROSKY ("GROSKY") was the Chief
Executive Officer of Efoora, and the Chairman of the Board of
Directors from at least 1998 through approximately March 2005.

1

d.     Defendant CRAIG RAPPIN ("RAPPIN") was the Chief Operating Officer of Efoora, and a member of the Board of Directors from at least 1998 through approximately March 2004.

e.     Defendant MELVIN DOKICH ("DOKICH") was employed by Efoora as an Account Executive. His primary responsibility was selling Efoora stock and raising money through other investments in Efoora from approximately October 1999 through approximately May 2006.

f.     Efoora attempted to develop certain diagnostic tests for commercial distribution in the United States, including a rapid HIV test, a glucose test for diabetes, a test for mad cow disease, and a test for chronic wasting disease in mules, deer, and elk.

g.     The HIV and glucose tests required approval from the U.S. Food and Drug Administration ("FDA") before those tests could be sold commercially in the United States. Efoora was not able to obtain FDA approval to market the HIV test commercially in the United States. Efoora never submitted an application to the FDA relating to the glucose test.

h.     The mad cow disease test and the chronic wasting disease test required approval from the U.S. Department of Agriculture ("USDA") before they could be sold commercially in the United States. Efoora never submitted an application to obtain USDA approval, and never received USDA approval, relating to the mad cow disease test. Although Efoora did receive USDA approval

relating to the wasting disease test in or about March 2004, Efoora was not successful in marketing or selling that test commercially.

     i.    Efoora obtained contracts to manufacture certain products for other companies, using Efoora's equipment.

    2.    Beginning no later than in or about the summer of 1999, and continuing until at least in or about March 2006, at Buffalo Grove, in the Northern District of Illinois, Eastern Division, and elsewhere,

> DAVID GROSKY,
> CRAIG RAPPIN, and
> MELVIN DOKICH,

defendants herein, together with others, devised and intended to devise, and participated in, a scheme and artifice to defraud and to obtain money and property from prospective and actual investors by means of materially false and fraudulent pretenses, representations and promises, and by means of material omissions, which scheme is further described below.

    3.    It was part of the scheme that the defendants obtained and retained funds from investors based on materially false representations and material omissions, which included false statements concerning Efoora's current and projected sales revenues, Efoora's manufacturing capabilities, the viability of Efoora's tests, the possibility of Efoora's becoming a publicly traded company within a certain period of time, the existence of certain sales contracts, the amount of the commissions paid by

3

Efoora in connection with the sale of stock, the imminence of FDA approval and other regulatory approval, and the risk involved in investing in Efoora, as well as other material matters. In connection with this scheme, the defendants each personally received millions of shares of Efoora stock, and GROSKY received more than $1.5 million from the sale of Efoora shares; GROSKY received a salary totaling approximately $1 million, and RAPPIN received a salary totaling approximately $1 million over the course of the scheme; DOKICH placed investor funds in a personal bank account and withdrew more than $500,000 in cash from that account; and the defendants each obtained other financial benefits from and through Efoora.

4.   It was further part of the scheme that the defendants gave tours, and caused others to give tours, of Efoora's facilities to various individuals, including investors, potential investors, customers, and prospective customers. The defendants, and other co-schemers, directed and gave those tours in order to create the false appearance that Efoora was more productive and more successful than it actually was. The defendants, and other co-schemers, used the following means, among others, to deceive individuals touring Efoora's facilities:

a.   Empty boxes were stacked, labeled and arranged to make it falsely appear that Efoora was in the process of shipping products to certain customers.

4

b. Temporary workers were hired from an employment agency to make it falsely appear that Efoora had more staff than it did.

c. Machines and equipment that were not ordinarily used by Efoora were operated during tours, to make it falsely appear that Efoora was operating at full capacity.

d. Fake test kits were assembled during the tours, using scrap materials, and without adding the needed chemicals to the test kits, in order to make it falsely appear that Efoora was producing more test kits than it was actually producing.

e. Workers packed boxes full of the fake test kits, in order to create the false illusion that Efoora had orders to be shipped out to customers.

f. Visitors were shown a manufacturing area that was falsely identified as a Class 100 clean room, even though that area did not meet the specifications or requirements of a Class 100 clean room.

g. The defendants made, and caused others to make, materially false representations to participants in the tours regarding Efoora's existing contracts, Efoora's current revenues, Efoora's manufacturing abilities, the likelihood and timing of FDA approval for Efoora's HIV tests and glucose tests, and the likelihood and timing of Efoora's going public.

5. It was further part of the scheme that in order to convince individuals to invest in Efoora, the defendants made, and caused others to make, materially false representations, which included the following:

a. The defendants falsely represented that Efoora was going to become a publicly traded company within a short period of time and the value of the stock would increase significantly, when, in fact, the defendants knew that Efoora could not go public within the specified time period because Efoora had not taken and defendant GROSKY did not intend to take the actions required to go public, which included obtaining audited financial statements, and refraining from the sale of any stock for a six month period.

b. The defendants fraudulently overstated Efoora's manufacturing capabilities, including by making and causing others to make false representations that Efoora could manufacture millions of tests a year with the equipment that Efoora had, when in fact, the defendants knew that Efoora could not produce the specified number of tests with Efoora's existing equipment.

c. The defendants falsely represented that Efoora was producing millions of HIV tests and shipping those tests to other countries, when in fact the defendants knew that Efoora was not doing so.

d. The defendants falsely represented that Efoora had obtained contracts with certain customers in countries around the

6

world, when in fact the defendants knew that those contracts had not been finalized and signed.

e.     The defendants fraudulently overstated Efoora's sales revenues, claiming that Efoora had many millions of dollars of sales, when in fact the defendants knew that Efoora's sales revenues were substantially lower than represented.

f.     The defendants falsely represented that Efoora was going to receive FDA approval of its HIV test within a short period of time, when in fact, the defendants knew that the HIV test was not going to be approved by the FDA within the specified time period.

g.     DOKICH falsely represented that Efoora's glucose test was ready to be commercially  marketed, when in fact DOKICH knew that Efoora had neither applied for nor received FDA approval of the glucose test, and Efoora did not have the equipment to produce glucose tests in large quantities.

h.     GROSKY falsely represented that Efoora's mad cow disease test would be on the market in a short period of time, when in fact GROSKY knew that the mad cow disease test would not be ready within the specified period of time, and that the test was not reliable.

i.     GROSKY falsely represented that there was virtually no risk involved in investing in Efoora stock because Efoora's HIV test was going to receive FDA approval and Efoora was going to go

7

public within a short period of time, when in fact GROSKY knew that investing in Efoora was very risky.

     j.    GROSKY and DOKICH each falsely represented that he was selling stock on behalf of Efoora, when in fact he was selling that stock in whole or in part for his own benefit, with the proceeds being deposited into personal bank accounts that were controlled by GROSKY or DOKICH.

    6.   It was further part of the scheme that the defendants provided written materials to certain investors and customers, and caused others to do so, which materials included private placement memoranda ("PPMs"), business plans, projected financials, newsletters, executive summaries, information on Efoora's website, and correspondence relating to Efoora. The defendants knew that those written materials contained certain materially false information, including false representations that:

     a.    Efoora would pay brokers 12% of the investment as commissions and fees, when in fact Efoora paid commissions that were as high as 45% of the value of the investment to brokers. The payment of huge commissions hampered Efoora's ability to research and develop its products because Efoora lacked the funds it needed to do so.

     b.    Efoora's investors were all accredited investors, who met certain financial requirements, when in fact Efoora sold stock to many investors who did not qualify as accredited

8

investors.

c. A large accounting firm had provided a valuation of Efoora's technology, showing that the technology was worth hundreds of millions of dollars, when in fact the accounting firm had not completed the valuation study, and Efoora had agreed that any information provided by that accounting firm would not be publicly disseminated, but rather would be used solely for internal purposes.

d. Efoora could produce portions of the glucose test at an extremely low price, when in fact Efoora had not completed developing the technology that would allow mass production of that product at the specified low price.

e. Projected sales revenues would skyrocket, increasing by tens of millions of dollars, and even hundreds of millions of dollars, when in fact such projections falsely overstated Efoora's potential revenues.

f. RAPPIN had a college degree, when in fact, RAPPIN did not have a college degree.

g. A specified number of Efoora shares would be sold at a particular price, when in fact GROSKY and DOKICH continued to sell, and caused others to sell, Efoora shares at varying prices, regardless of what the PPMs said.

9

7.    It was further part of the scheme that the defendants failed to disclose, and caused others to fail to disclose, material facts to certain investors and customers, including the following:

a.    Efoora was having severe financial difficulties, which meant that Efoora could not afford to pay for certain research, development, and equipment needed to develop and sell its products; Efoora would have been unable to meet its expenses if it stopped selling stock; Efoora could not afford to pay for audited financial statements which Efoora needed in order to go public; and Efoora had not found or retained an underwriter that was willing to help Efoora go public.

b.    There were serious problems relating to the design, production, manufacturing, quality control, and marketing of Efoora's tests, and various hurdles had to be overcome in order to generate revenue from Efoora's products, including problems relating to determining whether the HIV test results were positive or negative, and problems relating to the reliability of the mad cow disease test.

c.    Although Efoora had certain contracts, no monies were being paid to Efoora as a result of the contracts, and no tests were being produced to fulfill the contracts.

d.    Large sums of money were being paid to brokers as commissions in connection with the sale of stock - ordinarily 20%

10

to 45% of the funds being invested - which drastically depleted the money that was available to develop Efoora's products.

8.    It was further part of the scheme that after December 5, 2003, GROSKY and DOKICH each sold, and caused to be sold, newly issued Efoora stock, even though the Board of Directors had passed a resolution stating that, because the SEC was investigating Efoora, the company would no longer raise investment capital through the sale of common stock. GROSKY falsely represented to potential investors that Efoora had stopped selling stock because the company was going to go public within six months, when in fact GROSKY knew that the company had resolved to stop selling stock because of the SEC investigation, and that the company was not going to go public within six months; GROSKY falsely represented that he was selling Efoora stock that he personally owned, even though he was actually selling stock that was issued by - and belonged to - Efoora.

9.    It was further part of the scheme that on numerous occasions GROSKY and DOKICH sold, and caused others to sell, stock that was issued and own by Efoora, and then caused the proceeds from those sales to be deposited into personal bank accounts belonging to GROSKY or DOKICH, instead of causing the proceeds to be paid to Efoora as they should have been, which included the following:

11

a. GROSKY and DOKICH caused Efoora's transfer agent to issue stock directly to specific investors, and falsely represented to the investors that those stocks were personally owned by GROSKY or DOKICH.

b. On some occasions, GROSKY falsely represented to the transfer agent that Efoora's Board of Directors had approved the issuance of stock, and GROSKY used fraudulent documents to create the false appearance that the Board had voted in favor of the issuance of that stock.

c. GROSKY and DOKICH caused the proceeds from the sale of certain Efoora stock to be deposited into bank accounts that GROSKY or DOKICH controlled, thereby concealing the fact that stock, which was owned by the company, was being sold at prices that were different than the prices set forth in the Private Placement Memoranda, business plans, executive summaries, or other materials relating to the sale of Efoora stock.

d. Between in or about the middle of 2001 and in or about the end of 2002, DOKICH used his personal bank account at West Suburban Bank, in Lombard, Illinois, for transactions involving the sale of Efoora stock, which included depositing investors' checks into that account, and writing checks to Efoora from that account. DOKICH also withdrew more than $500,000 in cash from that bank account during 2001-2002, thereby making it difficult for Efoora and others to determine how the investors'

12

funds were used, and where those funds went. DOKICH withdrew that cash, which exceeded $500,000, in amounts of less than $10,000, thereby evading certain reporting requirements relating to the Internal Revenue Service.

     e.    GROSKY misappropriated investor funds - from the sale of stock owned by the company - for his own use and benefit. On some occasions, GROSKY purportedly "loaned" Efoora money that GROSKY had misappropriated from the sale of stock owned by the company.

    10.    It was further part of the scheme that the defendants did misrepresent, conceal, and hide, and cause to be misrepresented, concealed and hidden, the purposes of and acts done in furtherance of this fraud scheme.

    11.    It was further part of the scheme that the defendants executed and attempted to execute the scheme described above by causing various things, including business plans and other materials relating to Efoora, stock certificates, checks, wire transfers of funds, correspondence, e-mails, and faxes, to be transmitted through the mail, and by interstate wire.

13

## Mail Fraud: Purchase of Stock by an Investor

12. On or about August 12, 2003, in the Northern District of Illinois, Eastern Division, and elsewhere,

> DAVID GROSKY,
> CRAIG RAPPIN, and
> MELVIN DOKICH,

defendants herein, and others, for the purpose of executing the above-described scheme, and attempting to do so, did knowingly cause to be delivered by mail, according to the directions thereon, an envelope, containing a check from investor CH in California, made payable to Efoora, Inc, in the amount of approximately $15,000, to purchase stock in Efoora, which envelope was addressed to Efoora, in Buffalo Grove, Illinois;

In violation of Title 18, United States Code, Sections 1341 and 2.

14

## COUNT TWO

## Wire Fraud: Payment of Commissions ($152,228)

The SPECIAL SEPTEMBER 2005 Grand Jury further charges:

1. Paragraphs 1 through 11 of Count One of this indictment are realleged and incorporated as though fully set forth herein.

2. On or about August 14, 2003, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GROSKY, and
MELVIN DOKICH,

defendants herein, and others, for the purpose of executing the above-described scheme, and attempting to do so, did knowingly cause to be transmitted in interstate commerce from a bank in Buffalo Grove, Illinois, to a correspondent bank in Wisconsin, by means of wire and radio communications, certain writings, signs, and signals, through a phone line, namely: instructions directing the Wisconsin bank to wire transfer approximately $152,228 to a Florida company's bank account in Florida, which funds belonged to Efoora and were being sent to a broker in Florida to pay commissions - of approximately 45% - relating to the Florida company's sale of Efoora stock;

In violation of Title 18, United States Code, Sections 1343 and 2.

15

## COUNT THREE

## Wire Fraud: Payment of Commissions ($120,359)

The SPECIAL SEPTEMBER 2005 Grand Jury further charges:

1.    Paragraphs 1 through 11 of Count One of this indictment are realleged and incorporated as though fully set forth herein.

2.    On or about August 21, 2003, in the Northern District of Illinois, Eastern Division, and elsewhere,

                    DAVID GROSKY, and
                    MELVIN DOKICH,

defendants herein, and others, for the purpose of executing the above-described scheme, and attempting to do so, did knowingly cause to be transmitted in interstate commerce from a bank in Buffalo Grove, Illinois, to a correspondent bank in Wisconsin, by means of wire and radio communications, certain writings, signs, and signals, through a phone line, namely: instructions directing the Wisconsin bank to wire transfer approximately $120,359 to a Florida company's bank account in Florida, which funds belonged to Efoora and were being sent to a broker in Florida to pay commissions - of approximately 45% - relating to the Florida company's sale of Efoora stock;

In violation of Title 18, United States Code, Sections 1343 and 2.

16

## COUNT FOUR

## Wire Fraud: Payment of Commissions ($89,093)

The SPECIAL SEPTEMBER 2005 Grand Jury further charges:

1.   Paragraphs 1 through 11 of Count One of this indictment are realleged and incorporated as though fully set forth herein.

2.   On or about January 9, 2004, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GROSKY, and
MELVIN DOKICH,

defendants herein, and others, for the purpose of executing the above-described scheme, and attempting to do so, did knowingly cause to be transmitted in interstate commerce from a bank in Buffalo Grove, Illinois, to a correspondent bank in Wisconsin, by means of wire and radio communications, certain writings, signs, and signals, through a phone line, namely: instructions directing the Wisconsin bank to wire transfer approximately $89,093 to a Florida company's bank account in Florida, which funds belonged to Efoora and were being sent to a broker in Florida to pay commissions relating to the Florida company's sale of Efoora stock;

In violation of Title 18, United States Code, Sections 1343 and 2.

17

## COUNT FIVE

## Wire Fraud: Stock Purchase by an Investor

The SPECIAL SEPTEMBER 2005 Grand Jury further charges:

1. Paragraphs 1 through 11 of Count One of this indictment are realleged and incorporated as though fully set forth herein.

2. On or about February 13, 2004, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GROSKY, and
MELVIN DOKICH,

defendants herein, and others, for the purpose of executing the above-described scheme, and attempting to do so, did knowingly cause to be transmitted in interstate commerce from a bank in Virginia, to a bank in Illinois, by means of wire and radio communications, certain writings, signs, and signals, namely: a wire transfer of approximately $70,000 from investor HC to purchase Efoora stock;

In violation of Title 18, United States Code, Sections 1343 and 2.

18

## COUNT SIX

## Wire Fraud:  Fax Sent to Efoora's Transfer Agent

The SPECIAL SEPTEMBER 2005 Grand Jury further charges:

1.    Paragraphs 1 through 11 of Count One of this indictment are realleged and incorporated as though fully set forth herein.

2.    On or about March 17, 2004, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GROSKY, and
MELVIN DOKICH,

defendants herein, and others, for the purpose of executing the above-described scheme, and attempting to do so, did knowingly cause to be transmitted in interstate commerce from Efoora, Inc., in Buffalo Grove, Illinois, to a stock transfer company located in Salt Lake City, UT, by means of wire and radio communications, certain writings, signs, and signals, namely: a letter and board resolution directing that Efoora shares be transferred to investor RH;

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT SEVEN

## Mail Fraud:  Marketing Materials Sent by Mail

The SPECIAL SEPTEMBER 2005 Grand Jury further charges:

1.    Paragraphs 1 through 11 of Count One of this indictment are realleged and incorporated as though fully set forth herein.

2.    On or about June 1, 2004, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GROSKY, and
MELVIN DOKICH,

defendants herein, and others, for the purpose of executing the above-described scheme, and attempting to do so, did knowingly cause to be delivered by mail, according to the directions thereon, an envelope from Efoora, containing a group of documents relating to Efoora, in an attempt to convince an individual, identified as LA, to invest money, which envelope was addressed to LA, at an address in Chicago, Illinois;

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT EIGHT

## Mail Fraud: Marketing Materials Sent by Mail

The SPECIAL SEPTEMBER 2005 Grand Jury further charges:

1. Paragraphs 1 through 11 of Count One of this indictment are realleged and incorporated as though fully set forth herein.

2. On or about June 8, 2004, in the Northern District of Illinois, Eastern Division, and elsewhere,

> DAVID GROSKY, and
> MELVIN DOKICH,

defendants herein, and others, for the purpose of executing the above-described scheme, and attempting to do so, did knowingly cause to be delivered by mail, according to the directions thereon, an envelope from Efoora, containing a letter and sales materials, in an attempt to convince an individual, identified as LA, to invest money, which envelope was addressed to LA, at an address in Chicago, Illinois;

In violation of Title 18, United States Code, Sections 1341 and 2.

21

## COUNT NINE

### Wire Fraud: Payment of Commissions ($116,868)

The SPECIAL SEPTEMBER 2005 Grand Jury further charges:

1. Paragraphs 1 through 11 of Count One of this indictment are realleged and incorporated as though fully set forth herein.

2. On or about July 22, 2004, in the Northern District of Illinois, Eastern Division, and elsewhere,

> DAVID GROSKY, and
> MELVIN DOKICH,

defendants herein, and others, for the purpose of executing the above-described scheme, and attempting to do so, did knowingly cause to be transmitted in interstate commerce from a bank in Buffalo Grove, Illinois, to a correspondent bank in Wisconsin, by means of wire and radio communications, certain writings, signs, and signals, through a phone line, namely: instructions directing the Wisconsin bank to wire transfer approximately $116,868 to a broker's bank account in California, which funds belonged to Efoora and were being sent to a broker in California to pay commissions - of approximately 45% - relating to the broker's obtaining funds for Efoora from an investor;

In violation of Title 18, United States Code, Sections 1343 and 2.

22

## COUNT TEN

## Money Laundering: Payment of Commissions ($152,228)

The SPECIAL SEPTEMBER 2005 Grand Jury further charges:

1. Paragraph 1 of Count One of this indictment is realleged and incorporated as though fully set forth herein.

2. On or about August 14, 2003, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GROSKY, and
MELVIN DOKICH,

defendants herein, and others, knowingly conducted a financial transaction involving the proceeds of specified unlawful activity, namely mail fraud and wire fraud, as more fully described in Counts One through Nine of this Indictment, with the intent to promote the carrying on of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in that the defendants caused a wire transfer of approximately $152,228 to be sent from Efoora's bank account in Buffalo Grove, Illinois, to a Florida company's bank account in Florida, to pay commissions - of approximately 45% - relating to the Florida company's sale of Efoora stock;

In violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

23

## COUNT ELEVEN

### Monetary Transaction: Payment of Commissions ($152,228)

The SPECIAL SEPTEMBER 2005 Grand Jury further charges:

1. Paragraph 1 of Count One of this indictment is realleged and incorporated as though fully set forth herein.

2. On or about August 14, 2003, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GROSKY, and
MELVIN DOKICH,

defendants herein, and others, knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000, which was derived from specified unlawful activity, namely mail fraud and wire fraud as more fully described in Counts One through Nine of this Indictment, in that the defendants caused a wire transfer of approximately $152,228 to be sent from Efoora's bank account in Buffalo Grove, Illinois, to a Florida company's bank account in Florida, to pay commissions - of approximately 45% - relating to the Florida company's sale of Efoora stock;

In violation of Title 18, United States Code, Sections 1957, and 2.

24

## COUNT TWELVE

## Money Laundering:   Payment of Commissions ($120,359)

The SPECIAL SEPTEMBER 2005 Grand Jury further charges:

1.    Paragraph 1 of Count One of this indictment is realleged and incorporated as though fully set forth herein.

2.    On or about August 21, 2003, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GROSKY, and
MELVIN DOKICH,

defendants herein, and others, knowingly conducted a financial transaction involving the proceeds of specified unlawful activity, namely mail fraud and wire fraud, as more fully described in Counts One through Nine of this Indictment, with the intent to promote the carrying on of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in that the defendants caused a wire transfer of approximately $120,359 to be sent from Efoora's bank account in Buffalo Grove, Illinois, to a Florida company's bank account in Florida, to pay commissions - of approximately 45% - relating to the Florida company's sale of Efoora stock;

In violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

## COUNT THIRTEEN

## Monetary Transaction: Payment of Commissions ($120,359)

The SPECIAL SEPTEMBER 2005 Grand Jury further charges:

1. Paragraph 1 of Count One of this indictment is realleged and incorporated as though fully set forth herein.

2. On or about August 21, 2003, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GROSKY, and
MELVIN DOKICH,

defendants herein, and others, knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000, which was derived from specified unlawful activity, namely mail fraud and wire fraud as more fully described in Counts One through Nine of this Indictment, in that the defendants caused a wire transfer of approximately $120,359 to be sent from Efoora's bank account in Buffalo Grove, Illinois, to a Florida company's bank account in Florida, to pay commissions - of approximately 45% - relating to the Florida company's sale of Efoora stock;

In violation of Title 18, United States Code, Sections 1957, and 2.

26

## COUNT FOURTEEN

## Money Laundering:  Payment of Commissions ($89,093)

The SPECIAL SEPTEMBER 2005 Grand Jury further charges:

1.    Paragraph of Count One of this indictment is realleged and incorporated as though fully set forth herein.

2.    On or about January 9, 2004, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GROSKY, and
MELVIN DOKICH,

defendants herein, and others, knowingly conducted a financial transaction involving the proceeds of specified unlawful activity, namely mail fraud and wire fraud, as more fully described in Counts One through Nine of this Indictment, with the intent to promote the carrying on of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in that the defendants caused a wire transfer of approximately $89,093 to be sent from Efoora's bank account in Buffalo Grove, Illinois, to the bank account of a Florida company, to pay a commission relating to the Florida company's sale of Efoora stock;

In violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

27

## COUNT FIFTEEN

## Monetary Transaction: Payment of Commissions ($89,093)

The SPECIAL SEPTEMBER 2005 Grand Jury further charges:

1. Paragraph 1 of Count One of this indictment is realleged and incorporated as though fully set forth herein.

2. On or about January 9, 2004, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GROSKY, and
MELVIN DOKICH,

defendants herein, and others, knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000, which was derived from specified unlawful activity, namely mail fraud and wire fraud as more fully described in Counts One through Nine of this Indictment, in that the defendants caused a wire transfer of approximately $89,093 to be sent from Efoora's bank account in Buffalo Grove, Illinois, to a Florida company's bank account in Florida, to pay commissions relating to the Florida company's sale of Efoora stock;

In violation of Title 18, United States Code, Sections 1957, and 2.

28

## COUNT SIXTEEN

## Money Laundering: Payment of Commissions ($116,868)

The SPECIAL SEPTEMBER 2005 Grand Jury further charges:

1. Paragraph of Count One of this indictment is realleged and incorporated as though fully set forth herein.

2. On or about July 22, 2004, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID GROSKY, and
MELVIN DOKICH,

defendants herein, and others, knowingly conducted a financial transaction involving the proceeds of specified unlawful activity, namely mail fraud and wire fraud, as more fully described in Counts One through Nine of this Indictment, with the intent to promote the carrying on of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in that the defendants caused a wire transfer of approximately $116,868 to be sent from Efoora's bank account in Buffalo Grove, Illinois, to a broker's bank account in California, to pay a commission - of approximately 45% - relating to the broker's obtaining funds for Efoora from an investor;

In violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

29

## COUNT SEVENTEEN

## Monetary Transaction: Payment of Commissions ($116,868)

The SPECIAL SEPTEMBER 2005 Grand Jury further charges:

1. Paragraph 1 of Count One of this indictment is realleged and incorporated as though fully set forth herein.

2. On or about January 9, 2004, in the Northern District of Illinois, Eastern Division, and elsewhere,

> DAVID GROSKY, and
> MELVIN DOKICH,

defendants herein, and others, knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000, which was derived from specified unlawful activity, namely mail fraud and wire fraud as more fully described in Counts One through Nine of this Indictment, in that the defendants caused a wire transfer of approximately $116,868 to be sent from Efoora's bank account in Buffalo Grove, Illinois, to a broker's bank account in California, to pay a commission - of approximately 45% - relating to the broker's obtaining funds for Efoora from an investor;

In violation of Title 18, United States Code, Sections 1957, and 2.

## COUNTS EIGHTEEN THROUGH FIFTY

## Structuring Cash Withdrawals

The SPECIAL SEPTEMBER 2005 Grand Jury further charges:

1. Paragraph 1 of Count One of this indictment is realleged and incorporated as though fully set forth herein.

2. At all times material to this indictment, Title 31, United States Code, Section 5313(a) and Title 31, Code of Federal Regulations, Section 103.22 required domestic financial institutions to prepare and file with the Internal Revenue Service a Currency Transaction Report (Form 4789) for any transaction involving currency of more than $10,000.

3. At all times material to this indictment, West Suburban Bank was a domestic financial institution subject to the Currency Transaction Reporting requirements described in the preceding paragraph.

4. On or about the dates set forth below, in the Northern District of Illinois, Eastern Division, and elsewhere,

### MELVIN DOKICH,

defendant herein, did knowingly and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a) and regulations prescribed there under, structure and assist in structuring transactions with the West Suburban Bank by causing the withdrawal of United States currency in amounts under $10,000 in separate transactions at West Suburban Bank as set forth

below, each transaction conducted on a single date constituting a separate offense, and did so as part of a pattern of illegal activity involving more than $100,000 in a twelve-month period commencing on or about August 13, 2001:

| COUNT | | DATE | | AMOUNT |
|-------|---|----------|---|-------------|
| 18 | | 8/13/01 | | $ 9,500 |
| 19 | | 8/14/01 | | $ 9,500 |
| 20 | | 8/15/01 | | $ 9,500 |
| 21 | | 8/16/01 | | $ 9,500 |
| 22 | | 8/17/01 | | $ 9,500 |
| 23 | | 8/20/01 | | $ 9,500 |
| 24 | | 8/24/01 | | $ 9,500 |
| 25 | | 8/25/01 | | $ 9,500 |
| 26 | | 8/27/01 | | $ 9,500 |
| 27 | | 8/28/01 | | $ 9,500 |
| 28 | | 8/29/01 | | $ 9,500 |
| 29 | | 8/30/01 | | $ 9,500 |
| 30 | | 8/31/01 | | $ 9,500 |
| | | | | |
| 31 | | 12/4/01 | | $ 9,000 |
| 32 | | 12/6/01 | | $ 9,500 |
| 33 | | 12/7/01 | | $ 8,000 |
| 34 | | 12/12/01 | | $ 9,500 |
| 35 | | 12/12/01 | | $ 9,500 |
| 36 | | 12/14/01 | | $ 9,500 |
| 37 | | 12/19/01 | | $ 9,500 |
| 38 | | 12/22/01 | | $ 9,500 |

| 39 | | 12/27/01 | | $ 9,500 |
|----|--|----------|--|---------|
| 40 | | 12/31/01 | | $ 9,900 |
| | | | | |
| 41 | | 3/30/02 | | $ 9,500 |
| 42 | | 4/1/02 | | $ 9,500 |
| 43 | | 4/10/02 | | $ 9,000 |
| 44 | | 4/15/02 | | $ 9,500 |
| 45 | | 4/16/02 | | $ 9,500 |
| 46 | | 4/18/02 | | $ 9,500 |
| 47 | | 5/10/02 | | $ 9,500 |
| 48 | | 5/13/02 | | $ 9,500 |
| 49 | | 5/15/02 | | $ 9,500 |
| 50 | | 5/29/02 | | $ 9,500 |

In violation of Title 31, United States Code, Section 5324(a)(3) and Title 18, United States Code, Section 2.

33

## FORFEITURE ALLEGATION ONE

## Relating to Mail Fraud and Wire Fraud

The SPECIAL SEPTEMBER 2005 GRAND JURY further charges:

1.    The allegations contained in Counts 1 through 9 of this Indictment are realleged and incorporated herein by reference as if fully restated herein for the purpose of alleging certain property is subject to forfeiture to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(c) and Title 28, United States Code, Section 2461(c).

2.    As a result of violations of Title 18, United States Code, Sections 1341 and 1343 as alleged in the foregoing Indictment,

> DAVID GROSKY,
> CRAIG RAPPIN, and
> MELVIN DOKICH,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section, 981(a)(1)(c) and Title 28, United States Code, Section 2461(c), any and all right, title and interest in property, real and personal, which constitutes and is derived from proceeds traceable to the charged offenses.

3.    The interests of the defendants subject to forfeiture pursuant to Title 18, United States Code, Section, 981(a)(1)(c) and Title 28, United States Code, Section 2461(c) include but are not limited to:

(a)    At least $1,500,000; and

(b) Any interest or investment in Efoora, Inc. or any subsidiary of Efoora, Inc., including but not limited to Efoora stock, and investments in Efoora's Royalty Rights Offering;

(c) Any interest in any property, tangible or intangible, belonging to or in the custody of Efoora, Inc. or any subsidiary of Efoora, Inc., including but not limited to personal property, intellectual property, equipment, accounts receivable, and loans.

4. If any of the property subject to forfeiture and described above, as a result of any act or omission of the defendants:

- (a) Cannot be located upon the exercise of due diligence;
- (b) Have been transferred or sold to, or deposited with, a third party;
- (c) Have been placed beyond the jurisdiction of the Court;
- (d) Have been substantially diminished in value; or
- (e) Have been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property, including but not limited to the following property, under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c):

35

(i)     The real property commonly known as: 2848 Twin Oaks Drive, Highland Park, Illinois, 60035, legally described as follows:

LOT 15, HIGHLAND PARK HIGHLANDS, 3RD ADDITION BEING A SUBDIVISION OF THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SECTION 16, TOWNSHIP 43 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN THE CITY OF HIGHLAND PARK, LAKE COUNTY ILLINOIS, RECORDED NOVEMBER 8, 1957 AS DOCUMENT NO. 971436, BOOK 34, PAGE 52, RECORDER OF DEEDS, LAKE COUNTY, IL.

(ii)     The real property commonly known as: 4610 Kenilworth Ave, Berwyn, Illinois, 60402-4326, legally described as follows:

LOT 12 (EXCEPT THE SOUTH 40 FEET OF LOT 12) AND SOUTH 20 FEET OF LOT 13 IN BLOCK 15 IN FIRST ADDITION TO WALTER C. MCINTOSH FOREST VIEW GARDENS, BEING A SUBDIVISION OF LOTS 16, 17, 18, 19, 24, 25, 26, 27 IN CIRCUIT COURT PARTITION OF PARTS OF SECTION 31 AND 32, TOWNSHIP 39 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, AND PART OF SECTION 1, TOWNSHIP 38 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, AND PART OF THE NORTH EAST QUARTER OF SECTION 12, TOWNSHIP 38 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

(iii)     The real property commonly known as: 3619 Crestview Drive, Long Grove, Illinois, 60047, legally described as follows:

LOT 13 IN OAK ISLAND ESTATES, A SUBDIVISION OF PART OF THE EAST ½ OF THE SOUTHWEST 1/4 OF SECTION 24, TOWNSHIP 43 NORTH, RANGE 10, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED MARCH 5, 1957, AS DOCUMENT 942564, IN LAKE COUNTY ILLINOIS.

All pursuant to Title 18, United States Code, Section 981(a)(1)(c) and Title 28, United States Code, Section 2461(c).

## FORFEITURE ALLEGATION TWO

## Relating to Money Laundering and Monetary Transactions

The SPECIAL SEPTEMBER 2005 GRAND JURY further charges:

1. The allegations contained in Counts 10 through 17 of this Indictment are realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(1).

2. As a result of his violations of Title 18, United States Code, Sections 1956 and 1957 as alleged in the foregoing Indictment,

DAVID GROSKY, and
MELVIN DOKICH,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section, 982(a)(1), any and all right, title and interest in any property, real and personal, involved in such offenses, and any property traceable to such property.

3. The interests of the defendant subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(1), include: all money and other property that represents the subject of the transactions and all money and other property that is traceable thereto, including, but not limited to, approximately $478,548.

4. If any of the funds subject to forfeiture and described

37

above, as a result of any act or omission of the defendant:

- (a) Cannot be located upon the exercise of due diligence;
- (b) Have been transferred or sold to, or deposited with, a third party;
- (c) Have been placed beyond the jurisdiction of the Court;
- (d) Have been substantially diminished in value; or
- (e) Have been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property, including but not limited to the following property, under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1):

(i) The real property commonly known as: 2848 Twin Oaks Drive, Highland Park, Illinois, 60035, legally described as follows:

LOT 15, HIGHLAND PARK HIGHLANDS, 3RD ADDITION BEING A SUBDIVISION OF THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF SECTION 16, TOWNSHIP 43 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN THE CITY OF HIGHLAND PARK, LAKE COUNTY ILLINOIS, RECORDED NOVEMBER 8, 1957 AS DOCUMENT NO. 971436, BOOK 34, PAGE 52, RECORDER OF DEEDS, LAKE COUNTY, IL.

(ii) The real property commonly known as: 4610 Kenilworth Ave, Berwyn, Illinois, 60402-4326, legally described as follows:

LOT 12 (EXCEPT THE SOUTH 40 FEET OF LOT 12) AND SOUTH 20 FEET OF LOT 13 IN BLOCK 15 IN FIRST ADDITION TO WALTER C. MCINTOSH FOREST VIEW GARDENS, BEING A SUBDIVISION OF LOTS 16, 17, 18, 19, 24, 25, 26, 27 IN CIRCUIT COURT

38

PARTITION OF PARTS OF SECTION 31 AND 32, TOWNSHIP 39 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, AND PART OF SECTION 1, TOWNSHIP 38 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, AND PART OF THE NORTH EAST QUARTER OF SECTION 12, TOWNSHIP 38 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

All pursuant to Title 18, United States Code, Section 982(a)(1).

## FORFEITURE ALLEGATION THREE

## Relating to Structuring Cash Withdrawals (DOKICH)

The SPECIAL SEPTEMBER 2005 GRAND JURY further charges:

1. The allegations contained in Counts 18 through 50 of this indictment are realleged and incorporated by reference as if fully restated herein for the purpose of alleging that certain property is subject to forfeiture to the United States, pursuant to Title 31, United States Code, Section 5317.

2. As a result of his violations of Title 31, United States Code, Section 5324, as alleged in the foregoing indictment,

### MELVIN DOKICH,

defendant herein, shall forfeit to the United States, pursuant to Title 31, United States Code, Section 5317, any and all right, title, and interest he may have in any property, real and personal, involved in the structuring offenses and traceable to the property involved in structuring offenses, which property is subject to forfeiture pursuant to Title 31, United States Code, Section 5317(c)(1)(A).

3. The interests of the defendant subject to forfeiture to the United States pursuant to Title 31, United States Code, Section 5317(c)(1)(A), include, but are not limited to $311,400.

4. By virtue of the commission of the offenses charged in Counts 18 through 50 of this indictment by the defendant, all right, title or interest that defendant has in the above-described

property is vested in the United States and hereby forfeit pursuant
to Title 31, United States Code, Section 5317(c)(1)(A).

5.    If any of the property described above as being subject
to forfeiture pursuant to Title 31, United States Code, Section
5317, as a result of any act or omission of the defendant:

       a.    cannot be located upon the exercise of due
             diligence;

       b.    has been transferred to, sold to, or deposited with
             a third person;

       c.    has been placed beyond the jurisdiction of the
             Court;

       d.    has been substantially diminished in value;

       e.    has been commingled with other property which
             cannot be subdivided without difficulty;

it is the intent of the United States to seek forfeiture of
substitute property, including but not limited to the following
property, under the provisions of Title 21, United States Code,
Section 853(p), as incorporated by Title 31, United States Code,
Section 5317(c)(1)(b):

       The real property commonly known as: 4610 Kenilworth Ave,
       Berwyn, Illinois, 60402-4326, legally described as
       follows:

           LOT 12 (EXCEPT THE SOUTH 40 FEET OF LOT 12)
           AND SOUTH 20 FEET OF LOT 13 IN BLOCK 15 IN
           FIRST ADDITION TO WALTER C. MCINTOSH FOREST
           VIEW GARDENS, BEING A SUBDIVISION OF LOTS 16,
           17, 18, 19, 24, 25, 26, 27 IN CIRCUIT COURT
           PARTITION OF PARTS OF SECTION 31 AND 32,
           TOWNSHIP 39 NORTH, RANGE 13 EAST OF THE THIRD
           PRINCIPAL MERIDIAN, AND PART OF SECTION 1,
           TOWNSHIP 38 NORTH, RANGE 12, EAST OF THE THIRD
           PRINCIPAL MERIDIAN, AND PART OF THE NORTH EAST

41

QUARTER OF SECTION 12, TOWNSHIP 38 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

All pursuant to Title 31, United States Code, Section 5317.

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY