UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 06 CR 359 |
| v. | ) | |
| | ) | Judge Milton I. Shadur |
| DAVID GROSKY, | ) | |
| CRAIG RAPPIN, and | ) | |
| MELVIN DOKICH | ) | |

**GOVERNMENT'S CALCULATIONS
CONCERNING RESTITUTION AND LOSS**

The UNITED STATES OF AMERICA, by PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, respectfully submits the information set forth below concerning the appropriate amount of restitution to be ordered in this case, and identifying the total loss suffered by investors.

Based on the total amount of money lost by the investors during the time period that each defendant worked for Efoora, Inc., the government respectfully requests that the Court order the defendants to pay, jointly and severably, the following restitution:

**David Grosky:** $50,004,263

**Craig Rappin:** $39,649,195

**Melvin Dokich:** $55,130,612

The government will file a separate Response addressing the sentencing issues raised in David Grosky's Sentencing Memorandum, in which Grosky discusses the amount of loss and other issues. At sentencing, the government will provide to the Court with a list of the investors to whom restitution should be paid.

Set forth below is a report prepared by one of the case agents, which details the steps the agent took and the conclusions that he reached concerning the total amount of money lost by investors. The report states the following:

**Memorandum on the Calculation of Loss and Restitution.**
**Prepared by U.S. Postal Inspector Paul Krenn, CPA,**
**U.S. Postal Inspection Service**

Submitted for the Court's approval is the loss and restitution calculation in the government's case against defendants David Grosky ("Grosky"), Craig Rappin ("Rappin"), and Melvin Dokich ("Dokich").

We have determined that the total amount of loss to active shareholders approximates $57,769,237, representing the value of 178,621,130 shares of stock outstanding from Efoora, Inc., ("Efoora"). This represents all active shareholders from the company's inception through June 2007. We have limited the loss and restitution calculation, however, to the period of association between the defendants and Efoora. The loss for this period, stemming from June 1999 through May 2006, totals $55,130,612. Each defendant is jointly responsible for the losses incurred by shareholders, limited only by their tenure with Efoora. By this criterion, we have calculated the amount due from Rappin at $39,649,195. We have calculated the amount due from Grosky at $50,004,263. And we have calculated the amount due from Dokich at $55,130,612. The amounts are not mutually exclusive. A detailed analysis of these calculations can be found in the "Loss and Restitution Calculations" section of this document.

Calculations have been developed based upon the review of documents and databases originating from Efoora, and in consultation with FBI Special Agent Sean Carr. We have also reviewed analysis of financial records related to these defendants in this case performed by the U.S. Securities and Exchange Commission ("SEC"). My conclusions are based upon our investigation, and draws upon my 12 years experience as an Illinois State licensed Certified Public Accountant, and 13 years experience as a federal agent with the U.S. Postal Inspection Service, investigating crimes including white collar and investment fraud schemes.

**Limitations**

No single source of information exists from which a loss calculation could be made. Efoora did not establish an accurate functioning database of shareholder information. Efoora did not properly account for investors' funds. It is impossible to determine from Efoora's records the exact amount due and owing each investor in this case. We can, however, make a reasonable determination based upon existing documentation and other evidence.

We examined in excess of 275,000 documents, which included shareholder subscription agreements, shareholder correspondence, company e-mails, investor files, copies of checks, bank statements, wiring instructions, financial statements, and shareholder lists. We examined Efoora's unaudited financial statements and various management reports, which were often the basis for the solicitations that were made to investors. We interviewed, spoke with, or corresponded with more than 200 past and present Efoora investors. We reviewed more than 750 Victim Financial Impact Statements, which were submitted by victims in this case. We interviewed former employees and outside accountants who had been retained for the firm.

**Victims**

There are approximately 7,261 stock certificates which were issued and are currently outstanding, representing more than 178.6 million shares, according to the Interwest Transfer Company, Efoora's transfer agent. Of this amount, we have classified 6,563 stock certificates as "victim" certificates, representing 160.3 million shares outstanding. Given the number of independent promoters and broker/dealers involved in fundraising on behalf of Efoora, and the lack of internal controls over financial processes, it is possible that there are additional investor victims in this case who have not been identified. We have made a best faith effort in this regard, using various avenues available to us, including the U.S. Mail, e-mail, transfer

agent records, and internet news services, to locate and communicate with all victims. Through these efforts, we documented losses for 4,783 of the 6,563 "victim" stock certificates. The value of the remaining 1,780 stock certificates was determined based upon a loss calculation developed from the average values of share prices at the time of stock issuance. The value of any stock held by the defendants was discounted to "zero," to maximize the recovery to investors.



**Company Fundraising**

Despite Efoora's lack of sound accounting practices and financial controls relative to investor funds, a financial trail does exist for a substantial amount of the funds raised. Efoora engaged in several private stock offerings to raise money from investors. Efoora documents indicate they raised approximately $30 million between 1994 and December 2003, as follows:

**Summary of Offerings**

The last available financial statement (which was not audited) covered the fiscal year ending December 2003. Examination of other financial records obtained during the criminal investigation discloses the company raised at least $39 million dollars between 1997 and 12/31/2003, at an average price per share of $.29.

| Year | Common Shares Issued | Total Cash |
|---|---|---|
| Prior to 1/1/1997 | 33,612,840 | $ 883,109 |
| 1997 | 10,292,342 | 1,036,170 |
| 1998 | 11,720,955 | 2,333,112 |
| 1999 | 28,957,252 | 3,118,425 |
| 2000 | 14,658,022 | 5,696,745 |
| 2001 | 9,440,679 | 4,264,044 |
| 2002 | 10,497,379 | 7,385,242 |
| 2003 | 15,416,535 | 14,499,519 |
| Totals | 134,596,004 | $ 39,216,366 |

Based on Efoora's records it appears that management engaged in other activities which raised capital and issued shares to investors, because there is a 72 million share gap between the financial statements and the offering summary, and there is nearly a $10 million gap in the amount attributed to these activities.



Despite the lack of financial statements beyond fiscal year 2003, we were able to estimate, with reasonable certainty, the amounts raised by Efoora from 2004 through 2006. Among the evidence considered:

- Documents from 2004 stating the company issued at least 8.8 million shares for $1.4 million dollars through April 30, 2004.
- Memos, including one dated September 14, 2004, authored by Grosky to the Efoora Board of Governors, in which Grosky stated: "From January 1st through today, I have sold approximately two million dollars of my stock the proceeds of which have, in the entirety, been loaned by me to Efoora." The proceeds of this stock was loaned to company, and was not included in the paid in capital accounts, as would be typical of stock sales. In this same memo from Grosky, he stated: "...continue to "limp along" and limitedly raise money through the Royalty Revenue Sharing Offering (which is producing approximately $100,000 to $150,000/month) and to, in addition, have me and/or others sell personal/private stock and loan proceeds to the company as I have done this year.
- Correspondence between Efoora and fundraisers disclosing substantial transfers of stock for which the defendants received less than $.20 per original dollar tendered by investors.
- Contracts for convertible debt offerings and royalty partnership offerings made to victims, generating losses that cannot be fully substantiated.
- Subscription agreements, correspondence, and financial records documenting the sale and transfer of 66.6 million shares of stock between 2004 and 2007, generating proceeds in excess of $14 million dollars.

- Bank account analysis performed by the SEC documenting $11.5 million deposited to bank accounts controlled by Efoora and Grosky between 2004 and 2007.

**Loss and Restitution Calculations**

Efoora developed an investor database which was intended to serve this function, but never completed full implementation. We observed the following errors within the database:

- Mis-identified shareholders
- Missing or incorrect investment amounts
- Failure to properly account for stock conversion activities when removing trading restriction, resulting in duplicated values
- Failure to account for bonus stock awarded to investors
- Failure to properly account for value of stock issue in payment or trade for goods and services

We segmented the pre-1/1/2004 losses (that period for which financial statements were produced by management) into two groups. The first group included those investors for whom the loss could be documented. Based on our interpretation of the evidence available for examination, we documented individual shareholder losses of approximately $29,311,757 through 12/31/2003. This represented 3,642 of the 6,653 active "victim" stock certificates. We then calculated individual shareholder losses of $7,039,040 through 12/31/2003 for 762 active stock certificates, based upon the average value of shares sold during the respective fundraising periods. The total loss through December 31, 2003 was approximately $36,350,797, encompassing 4,404 of the 6,653 outstanding "victim" stock certificates. This amount clearly falls within the amount disclosed by management within their financial statements, which were issued to investors and other financial entities.

Our examination of the evidence led to the conclusion that Efoora raised at least another $20 million dollars between January 1, 2004 and 2006 through the sale of stock and other investment funding mechanisms. Evidence reviewed included the following:

- Two primary bank accounts used by the defendants to process investor funds evidenced approximately $11.5 million in investor transactions during the period;
- Documentation exists for $14.1 million which is similar to the evidence that was used to calculate the pre-12/31/2003 loss figures, which ties within reason to financial statements;
- Evidence exists that money channeled through the Partner's Holding bank account ($6.9 million in investor funds documented by the SEC) originated from the sale of stock at steeply discounted prices (as little as $.10 and $.20 per share); and
- The defendants failed to create an accounting trail which captured all relevant transaction data, which serves to establish the $11.5 million bank account figure as the floor, or a subset of the total loss to investors during this period.

We segmented the post-1/1/2004 investors into two groups. The first group consisted of 1,141 active "victim" stock certificates, for which we could document the loss. This group sustained collective losses of $13,658,925. The remaining 1,018 active "victim" stock certificates were subjected to a calculated loss estimate, based upon the average price of shares sold during the period of their investment. We calculated this loss at $5,120,890. The loss attributed to the post-1/1/2004 group totaled $18,779,815. The total loss to Efoora shareholders is summarized as follows:

| Loss Period and Type | Dollar Loss | Number of Shares | Number of Certificates |
|---|---|---|---|
| 1994 – 12/31/2003 Documented Losses | $ 29,311,757 | 62,885,325 | 3,642 |
| 1994 – 12/31/2003 Calculated Losses | 7,039,040 | 10,702,181 | 762 |
| 1/1/2004 - 2006 Documented Losses | 13,658,925 | 62,317,174 | 1,141 |
| 1/1/2004 - 2006 Calculated Losses | 5,120,890 | 24,395,050 | 1,018 |
| Totals | $ 55,130,612 | 160,299,730 | 6,563 |

**Summary Active "Victim" Stock Certificate Loss Calculation**

As previously stated, however, we have determined the amount of restitution owed by each defendant according to their association or tenure within Efoora. Each defendant was employed by Efoora from June 1999 through March 2004. There remain 4,789 active stock certificates outstanding from this period, representing 83,015,329 shares of stock, with a restitution value of $39,649,195. The defendants share responsibility for this amount.

The second calculation begins with Rappin's termination in March 2004, running through Grosky's departure in June 2005. There remain 1,394 active stock certificates outstanding from this period, representing 39,064,831 shares of stock, with a restitution value of $10,355,068. Grosky and Dokich share responsibility for this amount.

Dokich was the last remaining defendant at Efoora, from July 2005 through May 2006. There remain 380 active stock certificates outstanding from this period, representing 33,812,363 shares of stock, with a restitution value of $5,126,349. This amount is Dokich's sole responsibility.

According to these calculations, Rappin owes restitution in the amount of $39,649,195. We have calculated the total amount due from Grosky at $50,004,263. We have calculated the total amount due from Dokich at $55,130,612. The amounts are not mutually exclusive.

The following chart summarizes the amount due from each defendant, and the period from which this amount originated.

| Period | Rappin | | Grosky | | Dokich | |
| --- | --- | --- | --- | --- | --- | --- |
| | Shares Certificates | Value | Shares Certificates | Value | Shares Certificates | Value |
| 6/1/1999 - 3/1/2004 | 83,015,329 4,789 | $ 39,649,195 | 83,015,329 4,789 | $ 39,649,195 | 83,015,329 4,789 | $ 39,649,195 |
| 3/1/2004 - 6/30/2005 | | | 39,064,831 1,394 | 10,355,068 | 39,064,831 1,394 | 10,355,068 |
| 6/30/2005 - 5/31/2006 | | | | | 33,812,363 380 | 5,126,349 |
| Totals | 83,015,329 4,789 | $ 39,649,195 | 122,080,160 6,183 | $ 50,004,263 | 155,892,523 6,563 | $ 55,130,612 |

**Restitution, By Defendant, By Covered Period**

A detailed listing of loss by certificate number has been developed and is available separate from this document.

## CONCLUSION

For the reasons stated above, the government respectfully requests that this Court order the defendants to pay the amount of restitution set forth above, and that this Court find that the total loss to the investors was more than $20 million.

    Respectfully submitted,

    PATRICK J. FITZGERALD
    United States Attorney

BY:   *ss//Jacqueline Stern*
    JACQUELINE STERN
    Assistant United States Attorney
    219 South Dearborn, Suite 5000
    Chicago, Illinois 60604
    312/353-5329

**CERTIFICATE OF SERVICE**

The undersigned Assistant United States Attorney hereby certifies that the following documents:

**GOVERNMENT'S CALCULATIONS CONCERNING
RESTITUTION AND LOSS**

were served on February 27, 2008, in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

                                      Respectfully submitted,

                                      PATRICK J. FITZGERALD
                                      United States Attorney

BY:   *ss//Jacqueline Stern*
        JACQUELINE STERN
        Assistant United States Attorney
        219 South Dearborn, Suite 5000
        Chicago, Illinois 60604
        312/353-5329